UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 11-10706-RWZ


MARINKO RADAKOVIC

v.

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT:
FEDERAL INVESTIGATIVE SERVICES DIVISION,
and GENERAL COUNSEL, OFFICE OF PERSONNEL MANAGEMENT


MEMORANDUM

May 23, 2012


ZOBEL, D.J.

        Plaintiff, Marinko Radakovic, was terminated from his position as a legal

assistant at the Office of Hearing and Appeals for the Social Security Administration

("SSA") for alleged misstatements on his federal employment application. He filed this

action pro se against the United States Office of Personnel Management Investigative

Services Division ("OPM ISD") and the General Counsel's Office of Personnel

Management ("GCO OPM") seeking (1) "ratification of all my official federal

documents;" (2) "reinstatement to a new federal position;" (3) "back pay commensurate

with any raises I would have received if I had remained employed;" (4) "retirement

benefits and 401(K) benefits that I would have accrued;" (5) "positive references [ ] to

be provided to all prospective employers reflecting the truth about my exemplary

conduct as an employee."  The complaint does not cite to any statutory or common law causes of action nor does it set forth any specific counts.

The government, in moving to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. Rule 12(b)(1), interprets the complaint as including four claims: (1) wrongful termination; (2) violations of the Privacy Act; (3) negligent investigation; and (4) defamation. While plaintiff vigorously disagrees with the government's ultimate conclusion on each claim, he does not dispute its legal characterization thereof.

## I.  Background

Plaintiff was hired on June 22, 2008, as a Legal Assistant with the SSA and was terminated on December 1, 2008, during his one-year probationary period for alleged misrepresentations supplied in his "Declaration for Federal Employment." He had indicated in response to question 12 that he had not "been fired from any job for any reason," "quit after being told that you would be fired," or left "any job by mutual agreement because of specific problems." He also listed his prior work experience as an "Administrative Legal Assistant" with the Harmon Law Firm ("Harmon") and as a "Criminal Investigator" with the Massachusetts Office of the Attorney General. OPM ISD subsequently investigated plaintiff's work history and received information that plaintiff had been terminated from Harmon for performance based reasons.

Based on the results of the OPM ISD investigation and follow-up with Harmon by plaintiff's supervisor, Lisa Cataldo, she issued a notice of termination on behalf of the SSA on February 3, 2009. The notice explained that plaintiff was being terminated because he had inaccurately answered question 12 and because he listed his prior

positions as "legal assistant" and "criminal investigator" on his application when they were, in fact, "file clerk" and "intern" respectively.

Plaintiff did not appeal the termination, but on December 10, 2009, he filed a request with OPM ISD under the Privacy Act and sought amendment of his personnel file. He claimed that the allegations that he misrepresented his past work and termination were false and were shown to be so at a hearing before the Massachusetts Department of Workforce Development on June 9, 2009. OPM denied this request. In April 2010, plaintiff filed a "concise statement of disagreement" with OPM ISD's determination, and in May 2010, OPM ISD again declined to adjust plaintiff's file.  It responded that "disputed information should remain in the record, qualified by subsequent data, unless it represented a clear mistake of fact or irresponsible judgment..." It also noted that plaintiff's statement of disagreement would be added to his file and would be sent directly to all prior recipients of it.

Eight months after OPM ISD declined to adjust plaintiff's file, Thomas J. Walsh, Attorney Director at Harmon, wrote a letter to the SSA that the information originally submitted to the OPM ISD regarding plaintiff's separation from the firm did not "reflect the complete record" and that it "insinuated inaccurate information which may have caused the termination of Mr. Radakovic's employment." It further states that plaintiff "did not want to remain in his position as a File Room Clerk and at the same time we

were not able to offer him another position. Mr. Radakovic subsequently elected to move on to other ventures."[1]

In February 2011, plaintiff's then counsel filed another privacy act amendment requesting modification of plaintiff's employment file based on this letter.[2]

## II.  Analysis

### A.  Wrongful Termination

Plaintiff was terminated by SSA which is not a party to this action. However, even if plaintiff could assert a wrongful termination claim against either of the present defendants it would have to comply with the Civil Service Reform Act ("CSRA"). Pub.L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.). Removal of an individual from employment by an agency is governed by the CSRA as an "adverse personnel action."  5 U.S.C. § 7512(1). While an "employee" has a statutory right to appeal to the Merit Systems Protection Board, the rights of a "probationary employee" are more circumscribed. A probationary employee is an employee in his "first year of service;" such an employee is entitled only to a statement regarding the reasons for termination and the effective date of the termination. 5 C.F.R. § 315.804. Under OPM regulations a terminated probationary employee "may appeal ...

---

[1] Two other exculpatory letters that later surfaced are contained in the record, another purportedly from Mr. Walsh and one from John Pimentel (the individual that initially provided information to OPM ISD regarding the basis for plaintiff's departure from Harmon). However, their origin is suspect; these letters are not signed and appear on different letterhead from that used for the initial letter from Mr. Walsh. Further, in an affidavit attached to the government's reply brief, Mr. Walsh denies having written any subsequent letter and notes that to his knowledge Mr. Pimentel did not write one either.

[2] It is unclear whether plaintiff received an official response to this request, if he did that information is not in the record. However, at a status conference held on October 6, 2011, OPM ISD offered to include any signed letters from Harmon in his employment file so it would be complete and reflect plaintiff's version of the facts.

in writing an agency's decision to terminate him [or her] ... [but] only" if terminated for

"partisan political reasons or marital status" or on the basis of "race, color, religion, sex

or national origin, or age." 5 C.F.R. §§ 315.806(b)-(c). Plaintiff did not file an appeal on

either of these bases despite having been advised of his right to do so in the

termination letter from the SSA. The limited rights under the CSRA were plaintiff's

exclusive remedy to challenge his termination. Elgin v. U.S. Dept of Treasury, 641 F.3d

6, 8-9 (1st Cir. 2011). Therefore, the government's motion to dismiss this claim is

allowed.

### B.  Privacy Act Claim

Plaintiff also seeks to have his record modified under 5 U.S.C. § 552a(g)(1)(A),

and claims damages for the failure to handle his file with due care under 5 U.S.C. §

552a(g)(1)(C).

The later section provides relief when an agency:

fails to maintain any record concerning any individual with such accuracy,
relevance, timeliness, and completeness as is necessary to assure fairness in
any determination relating to the qualifications, character, rights, or opportunities
of, or benefits to the individual that may be made on the basis of such record,
and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C).

To prevail on a § 552a(g)(1)(C) claim, plaintiff must show that "(1) he has been

aggrieved by an adverse determination; (2) the [agency] failed to maintain his records

with the degree of accuracy necessary to assure fairness in the determination; [and] (3)

the [agency's] reliance on the inaccurate records was the proximate cause of the

adverse determination. Lee v. Geren, 480 F. Supp. 2d 198, 209 (D.D.C. 2007) (citing

Deters v. U.S. Parole Comm'n, 85 F.3d 655, 657 (D.C.Cir.1996)).  If he can prove both a violation and that the agency acted intentionally or wilfully, he may be entitled to actual damages, of no less than $1,000, and costs. 5 U.S.C.§ 552a(g)(4).

Plaintiff does not allege that at the time of the "adverse determination" by the SSA, the relevant time period for evaluating a § 552a(g)(1)(C) claim, OPM ISD had any information available to it that contradicted any of the negative information provided directly to it by Harmon and verified by Ms. Cataldo.  The letter from Mr. Walsh was not provided to the SSA until two years and one month after plaintiff's termination. Therefore plaintiff, as a matter of law, does not allege a § 552a(g)(1)(C) violation. Moreover, he pleads no facts that suggest that the government's investigation and collection of records in connection with his previous employment were unreasonable or that the defendants intentionally or wilfully failed to maintain his records accurately and completely.

A challenge under § 552a(g)(1)(A), on the other hand, does not require plaintiff to show he suffered an "adverse event." "To state a cause of action under subsection (g)(1)(A), a plaintiff must allege that the agency failed to comply with one of its obligations under § 552a(e). That is, a plaintiff cannot ask the court to order an agency to amend properly maintained records." Bassiouni v. F.B.I., No. 02 C 8918, 2003 WL 22227189, at *5 (N.D. Ill. Sept. 26, 2003). If a violation of § 552a(g)(1)(A) is established a plaintiff may seek "amend[ment of] [his] record in accordance with his request or in such other way as the court may direct. In such a case the court shall determine the matter de novo." 5 U.S.C.§ 552a(g)(2)(A). The record in this case does not support a

determination that defendants failed to maintain plaintiff's records in accordance with the mandates of § 552a(e), nor does plaintiff allege a violation of any of defendants' obligations under its subsections as would be required for § 552a(g)(1)(A) relief.

### C.  Negligent Investigation

Insofar as plaintiff asserts that defendants negligently investigated his employment history which ultimately led to this termination from the SSA, the Federal Torts Claim Act ("FTCA") 28 U.S.C. U.S.C. §§ 1346(b) and 2671 et. seq., provides the exclusive remedy for "injury ... arising from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). "Pursuant to the FTCA, a tort claim against the United States is forever barred unless it is presented in writing to the appropriate federal agency within two years after the claim accrues. Accordingly, it is well-settled that an FTCA claim must be dismissed if a plaintiff fails to file a timely administrative claim." Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002) (internal citations and quotations omitted).

Plaintiff's termination occurred on December 1, 2008; therefore, a claim of negligence would had to have been presented by December 1, 2010.  Plaintiff does not allege nor does any evidence suggest that he filed a claim with the OPM or the SSA by this date (or any date thereafter, for that matter). Accordingly, the government's motion to dismiss plaintiff's negligence claim is allowed.

### D.  Defamation

Plaintiff's defamation claim is also not actionable. Aside from the same exhaustion problem identified above, the FTCA does not recognize actions sounding in libel or slander. 28 U.S.C. § 2680(h); <u>Jimenez-Nieves v. United States</u>, 682 F. 2d 1, 6 (1st Cir. 1982) (confirming libel and slander "amount to" defamation).

## III.  Conclusion

The government's motion to dismiss (Docket # 23) is ALLOWED. Judgment may

be entered dismissing the complaint.


    May 23, 2012                                    /s/Rya W. Zobel

            DATE                                    RYA W. ZOBEL

                                     UNITED STATES DISTRICT JUDGE